ORDERED.

**Dated: January 21, 2020**

*Caryl E. Delano*
Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 9:18-bk-00673-FMD |
| | Chapter 7 |
| Ronald Daniel, | |
| Debtor. | |
| _____/ | |
| Leon Avren, | |
| Plaintiff, | |
| v. | Adv. No. 9:18-ap-216-FMD |
| Ronald Daniel, | |
| Defendant. | |
| _____/ | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND MEMORANDUM OPINION**

THIS PROCEEDING came before the Court for trial on December 17, 2019, of the *Complaint to Determine Dischargeability of Debt and Objection to Debtor's Discharge*[1] filed by Leon Avren ("Plaintiff"). Plaintiff seeks to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A),

---

[1] Doc. No. 1.

§ 523(a)(4), and § 523(a)(6), and also seeks the denial of Debtor's discharge under § 727(a)(4) because he alleges that Debtor made a number of misrepresentations on his bankruptcy schedules.

The Court has carefully considered the evidence and finds that Plaintiff did not establish the required elements for nondischargeability of the debt under § 523 or for denial of Debtor's discharge under § 727. Judgment will be entered in favor of Debtor on Plaintiff's Complaint.

### A. Background

*The Loan*

In 2012, Debtor formed United Health Centers, Inc. ("United") for the purpose of operating a nonprofit community health clinic in Collier County, Florida.[2] Debtor and Plaintiff were acquaintances at that time, having worked together at a hospital years earlier. They also socialized and sometimes lifted weights together. In December 2012, Debtor and Plaintiff discussed Plaintiff's making a loan in the amount of $100,000.00 for United to open and operate the clinic. The testimony is in dispute as to whether Debtor or Plaintiff initiated the discussions, but Plaintiff made the loan in January 2013.

The loan was documented by a promissory note (the "Note") dated January 8, 2013, which Debtor signed—on behalf of United, as Borrower—on May 4, 2013.[3] The Note provided that it was due and payable on January 8, 2014, and that it was secured by a certificate of deposit ("CD") in the amount of $100,000.00. But the blanks in the Note for the name of the bank where the CD was held were not filled in, and the account number for the CD was redacted in the copy of the Note admitted as evidence.

Debtor testified that his attorney drafted the Note, but that he was unaware of the existence of a $100,000.00 CD and would not have required a loan from Plaintiff if he had access to a CD in that

---

[2] Plaintiff's Exhibit 3, ¶¶ 8, 9.
[3] Exhibit 1 to Plaintiff's Exhibit 3.

2

amount. Plaintiff testified that he tried to talk to Debtor's attorney about the Note, but was unable to reach him by telephone.

The Note was not repaid when due in January 2014; in February 2014, Plaintiff filed a complaint against Debtor and United in the Circuit Court for Collier County, Florida.[4] In June 2014, after entry of a default, the Circuit Court entered final judgment in favor of Plaintiff and against Debtor and United in the amount of $126,112.25.[5]

### *Debtor's Bankruptcy Schedules*

On January 29, 2018, Debtor filed a petition under Chapter 7 of the Bankruptcy Code. On his schedule of assets, Debtor stated that he owned no real property, and that he owned personal property with a total value of $15,914.86. On his schedule of liabilities, Debtor listed creditors holding secured claims in the amount of $18,000.00, and creditors holding unsecured claims in the amount of $250,564.60. Debtor listed Plaintiff as a creditor holding a disputed, unsecured claim in the amount of $119,000.00.[6]

### *Plaintiff's Complaint*

Plaintiff timely filed a complaint objecting to discharge and dischargeability. The complaint contains four counts: Counts I through III are actions to determine the nondischargeability of the debt owed by Debtor under § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6) respectively, and Count IV is an action to deny Debtor's discharge under § 727(a)(4).

**B.    Burden of proof**

To except a debt from discharge under § 523(a)(2), § 523(a)(4), or § 523(a)(6), a plaintiff must prove all of the essential elements of the claim by a preponderance of the evidence.[7] Exceptions to

---

[4] Plaintiff's Exhibit 3.
[5] Exhibit 1 to Doc. No. 1.
[6] Main Case, Doc. No. 12.
[7] *Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S. Ct. 654, 660, 112 L. Ed. 2d 755 (1991).

3

the dischargeability of a particular debt are strictly construed in favor of the debtor and against the creditor.[8] Similarly, a plaintiff objecting to a debtor's discharge under § 727(a)(4) must establish the claim by a preponderance of the evidence.[9] The denial of a debtor's discharge is an "extraordinary remedy"[10] and an "extreme penalty,"[11] and objections to discharge are also construed liberally in favor of the debtor and strictly against the objecting party.[12]

### C.     Count I - § 523(a)(2)(A)

Under § 523(a)(2)(A), a debt is excepted from discharge if it was obtained by "false pretenses, a false representation, or actual fraud."[13] To prevail on a claim under § 523(a)(2)(A), the plaintiff must establish that the debtor made a false representation with the intent to deceive the plaintiff, that the plaintiff actually relied on the false representation, that the reliance was justified, and that the plaintiff suffered a loss as a result of the false representation.[14]

Here, Plaintiff alleged in his complaint that Debtor solicited a $100,000.00 loan from him with the representation that the funds would enable United to open a health clinic in Naples by April 2013, and that Plaintiff later learned that Debtor did not intend to operate a clinic at that location.[15]

But at trial, Plaintiff presented no evidence to establish this alleged misrepresentation. Instead, although it was not alleged in his complaint, Plaintiff testified that Debtor represented in his initial solicitation of the loan that Debtor had capital in the form of a $100,000.00 CD to "back up" United's

---

[8] *In re Kanewske*, 2017 WL 4381282, at *6 (Bankr. M.D. Fla. Sept. 29, 2017).
[9] *In re Khanani*, 374 B.R. 878, 888 (Bankr. M.D. Fla. 2005).
[10] *Dorsey v. DePaola*, 2012 WL 1957713, at *11 (M.D. Ala. May 31, 2012).
[11] *In re Nascarella*, 492 B.R. 914, 917 (Bankr. M.D. Fla. 2013).
[12] *Id.*
[13] 11 U.S.C. § 523(a)(2)(A).
[14] *In re Kanewske*, 2017 WL 4381282, at *6; *In re Taylor*, 2016 WL 116331, at *1 (Bankr. M.D. Fla. Jan. 11, 2016).
[15] Doc. No. 1, ¶¶ 9-14.

4

repayment of the loan.[16] According to Plaintiff, Debtor's representation regarding the CD was the primary factor in his decision to extend the loan. However, there is no evidence that Plaintiff performed even a minimal investigation to verify the status of the CD before he advanced the funds.

To establish his claim under § 523(a)(2)(A), Plaintiff must prove that he relied on an intentional misrepresentation by Debtor. And Plaintiff's reliance on the false representation must be justified.[17] "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case."[18] A creditor cannot rely on an alleged misrepresentation if the falsity would be apparent to him through a cursory examination.[19]

Here, Plaintiff and Debtor had no business dealings prior to 2013. The Note documenting the loan omits basic information regarding the identification and existence of the CD, such as the name and location of the bank and possibly the CD's account number.[20] But despite these obvious omissions in the documentation, Plaintiff testified that he never spoke with the attorney who prepared the Note. Further, the evidence does not show that Plaintiff inquired whether the CD was held by Debtor or United, or that he contacted any bank to investigate the CD's existence before making the loan. On the contrary, Plaintiff testified that he called a (unspecified) bank only after the loan was in default and then learned that the bank was not holding a CD for either Debtor or United.

Based on the evidence, even if the Court disregards Debtor's testimony that he knew nothing of the CD and accepts Plaintiff's testimony that Debtor misrepresented the existence of a CD, the

---

[16] Because Debtor's counsel did not object at trial to Plaintiff's testimony regarding Debtor's false representation regarding the CD, the Court finds this issue to have been tried with the consent of the parties.
[17] *In re Kanewske*, 2017 WL 4381282, at *6.
[18] *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995)(quoting W. Page Keeton, *Prosser & Keeton on Torts* § 108, at 751 (5th ed. 1984)).
[19] *In re Matkins*, 605 B.R. 62, 94 (Bankr. E.D. Va. 2019)(citing *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995)).
[20] The account number is redacted on the copy of the Note that was admitted as evidence.

Court finds that Plaintiff did not establish that he justifiably relied on Debtor's misrepresentation. Accordingly, the Court will enter judgment in favor of Debtor on Count I of the complaint.

### D.    Count II - § 523(a)(4)

Section 523(a)(4) provides an exception to discharge for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[21] Under § 523(a)(4), "the fiduciary duty in question must be owed to the plaintiff, not to another party."[22] Further, the term "fiduciary" in § 523(a)(4) is narrowly construed and generally requires the existence of an express or technical trust.[23]

Here, Plaintiff alleges that Debtor owed United a fiduciary duty and that Debtor misappropriated United's funds while acting in the fiduciary capacity.[24] Plaintiff did not present any evidence that Debtor owed a fiduciary duty to Plaintiff or that Debtor served as a fiduciary of an express trust. The Court finds that Plaintiff failed to allege or prove a claim under § 523(a)(4) of the Bankruptcy Code. Accordingly, the Court will enter judgment in favor of Debtor on Count II of the complaint.

### E.    Count III - § 523(a)(6)

Section 523(a)(6) provides an exception to discharge for debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."[25] An injury is "willful" under § 523(a)(6) if the debtor commits an intentional act "the purpose of which is to cause injury or

---

[21] 11 U.S.C. § 523(a)(4).
[22] *In re Gucciardo*, 577 B.R. 23, 33-34 (Bankr. E.D. N.Y. 2017); *In re Taylor*, 2016 WL 116331, at *1 (Bankr. M.D. Fla. Jan. 11, 2016)("To state a claim under § 523(a)(4) . . . a plaintiff must allege the existence of a fiduciary relationship between the defendant and herself . . . .").
[23] *In re Kanewske*, 2017 WL 4381282, at *7.
[24] Doc. No. 1, ¶¶ 28-31.
[25] 11 U.S.C. § 523(a)(6).

6

which is substantially certain to cause injury."[26] And an injury is "malicious" under § 523(a)(6) if it was "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[27]

In the complaint, Plaintiff recited the text of § 523(a)(6), but he did not identify any specific acts by Debtor that he believes were wrongful and intended to cause injury. Further, Plaintiff did not present any evidence at trial to establish that Debtor intended to injure Plaintiff by borrowing money. For example, Plaintiff did not present any evidence to show that Debtor used the borrowed funds for any purpose other than to open and operate a health clinic.

The Court finds that Plaintiff did not establish a claim for willful and malicious injury under § 523(a)(4). Accordingly, the Court will enter judgment in favor of Debtor on Count III of the complaint.

### F. Count IV - § 727(a)(4)

Under Section 727(a)(4), a debtor will be granted a discharge unless he knowingly and fraudulently made a false oath in or in connection with his bankruptcy case.[28] A false statement or omission on a debtor's schedules may constitute a false oath for purposes of § 727(a)(4).[29] To warrant denial of a debtor's discharge, the false oath "must be fraudulent and material."[30] Generally, courts evaluate false statements on a debtor's bankruptcy schedules to determine whether they "were part of a scheme to retain assets for the defendant's own benefit at the expense of creditors."[31] A false oath

---

[26] *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)(quoting *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995)).
[27] *Id.*
[28] 11 U.S.C. § 727(a)(4).
[29] *In re Petersen*, 323 B.R. 512, 517 (Bankr. N.D. Fla. 2005).
[30] *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991)(quoted in *In re Cawthon*, 594 B.R. 913, 923 (Bankr. N.D. Ga. 2018)).
[31] *In re Kanewske*, 2017 WL 4381282, at *9(citing *In re Dupree*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005)).

is material "if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property."[32]

Here, Plaintiff claims Debtor made six false statements or omissions on his bankruptcy schedules and statement of financial affairs ("SOFA"):

1. Plaintiff asserts that Debtor listed him as a creditor on his schedules at an erroneous address. The address listed for Plaintiff on Debtor's schedules was 3301 Tamiami Trail E, Bldg L #66, Naples, FL, which Plaintiff contends has "no connection" to him.[33] The record does not reflect the date or manner in which Plaintiff received actual notice of Debtor's bankruptcy case. But Plaintiff's attorney filed a Notice of Appearance in Debtor's main bankruptcy case on April 30, 2019,[34] and Plaintiff's complaint objecting to discharge and dischargeability was timely filed on the same date.

2. Plaintiff asserts that his prepetition lawsuit against Debtor was not included on the SOFA as a pending action.[35] A Final Judgment had been entered in the lawsuit on June 5, 2014,[36] more than three years before Debtor's bankruptcy petition, and the litigation since that time involved Plaintiff's efforts to collect the Final Judgment.

3. Plaintiff asserts that Debtor did not include payments made on behalf of his daughter on the SOFA.[37] On his schedule of assets, Debtor disclosed his wife and daughters as the beneficiaries of his term life insurance policy, and on his original Schedule J, Debtor included the sum of $1,238.00 per month as an expense for "Daughter's Rent during college."[38]

---

[32] *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)(cited in *In re Cawthon*, 594 B.R. at 923).
[33] Doc. No. 1, ¶ 38.
[34] Main case, Doc. No. 20.
[35] Doc. No. 1, ¶ 39.
[36] Exhibit 1 to Doc. No. 1.
[37] Doc. No. 1, ¶ 40.
[38] Main case, Doc. No. 12, Schedules B, J. On his Amended Schedule J, Debtor included the sum of $500.00 as an expense for his "daughter's college." (Main case, Doc. No. 35, Schedule J.)

4.  Plaintiff asserts that Debtor did not list all of his creditors on his schedule of liabilities, with the result that creditors and the Court cannot determine whether Debtor's debts are primarily consumer debts or primarily business debts.[39] Specifically, Plaintiff claims that Debtor omitted three judgment debts owed by Debtor to National Collegiate Student Loan Trust, Jana Shala a/k/a Jana Hayes, and Midland Funding LLC. But Debtor listed Midland Funding, LLC, on his schedules as a creditor with two claims, one in the amount of $460.00 and one in an unknown amount. And on his SOFA, Debtor listed a lawsuit filed by National Collegiate Student Loan Trust against himself and Jana Hayes. Debtor testified that he used a credit report from Experian to compile his list of creditors for the schedules.

5.  Plaintiff asserts that Debtor did not include his non-filing spouse's income on his schedule of income. At trial, Debtor acknowledged that his wife is employed, but testified that he did not include her income on his schedules because he understood that it was only he who was filing and paying for the bankruptcy case.[40]

6.  Plaintiff asserts that Debtor did not disclose all of his cash on hand on his schedule of personal property. According to Plaintiff, Debtor stated on his schedule of assets that he had no cash on January 29, 2018 (the petition date), but that one day later, on January 30, 2018, he paid the Collier County Clerk of Court the sum of $595.00 to resolve a probation matter. At trial, Debtor testified that his schedules were accurate, and that the payment on January 30 was made with a previously acquired money order payable to the Clerk.

Having reviewed Debtor's bankruptcy schedules and the testimony at trial, the Court finds that the false statements and omissions alleged by Plaintiff were not fraudulently made and were not

---

[39] Doc. No. 1, ¶ 41.
[40] The attorney who assisted Debtor in the preparation of his schedules withdrew from the case in April 2019. (Main case, Doc. Nos. 28, 32.)

material. Plaintiff received actual notice of Debtor's bankruptcy in time to participate in the case and timely filed the complaint that commenced this proceeding. The alleged omissions, such as the identification of three judgments against Debtor and Debtor's payment of $595.00 to the Collier County Clerk of Court to settle a probation issue, do not concern the discovery of any significant assets or business dealings by Debtor. Additionally, Debtor's schedules and SOFA do not establish his intent or effort to retain any assets for his own benefit at the expense of his creditors. Debtor listed his vehicles, his 401(k) account, and his term life insurance policy, and there is no evidence that he concealed any real property or personal property of value.

Finally, Plaintiff contends that Debtor incorrectly characterized his debts as primarily business debts rather than primarily consumer debts, thereby avoiding the requirement to file a Statement of Current Monthly Income (Means Test calculation). But the evidence shows that Debtor had formed United for a business purpose, and that Debtor's largest debt (the debt owed to Plaintiff) was a business debt related to Plaintiff's loan to United. In any event, even if Debtor mischaracterized his debts as being primarily business debts, Debtor was not prejudiced as he had actual notice of the bankruptcy and could have conducted discovery on this issue.

The Court finds that Plaintiff did not establish that Debtor knowingly and fraudulently made a false oath in his bankruptcy case under § 727(a)(4). Accordingly, the Court will enter judgment in favor of Debtor on Count IV of the complaint.

Accordingly, it is

**ORDERED:**

1.    The debt owed by Debtor to Plaintiff is not excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), or 523(a)(6).

      2.      The discharge of Debtor is not denied under 11 U.S.C. § 727(a)(4), and the Court will enter a separate Discharge of Debtor.

      3.      A separate Final Judgment in favor of Debtor, Ronald Daniel, and against Plaintiff, Leon Avren, will be entered in this proceeding.

Attorney Richard J. Hollander is directed to serve a copy of this Order on interested parties who are not CM/ECF users and to file a proof of service within three days of the date of this Order.